Melissa A. Fortunato (SBN #319767)
Marion C. Passmore (SBN #228474)
**BRAGAR EAGEL & SQUIRE, P.C.**
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 568-2124
Facsimile: (212) 214-0506
Email: fortunato@bespc.com
       passmore@bespc.com

*Counsel for the BLI Investors*
*and Proposed Lead Counsel for the Class*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR J. NG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> BERKELEY LIGHTS, INC., ERIC D. HOBBS, SHAUN M. HOLT and KURT WOOD, <br><br> Defendants. | Case No. 4:21-cv-09497-HSG <br><br> CLASS ACTION <br><br> **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE BERKELEY LIGHTS INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL** <br><br> Date:       May 15, 2022 <br> Time:       2:00 p.m. <br> Courtroom:  2, 4th Floor <br> Judge: Honorable Haywood S. Gilliam, Jr. |

### PRELIMINARY STATEMENT

Movants Connectra Technologies, Inc. ("Connectra"), Sookham Singh, and Taiki Yamaguchi (collectively, the "Berkeley Lights Investor Group," "BLI Investors," or "Movant") respectfully submit this Reply Memorandum of Law in Further Support of Movant's Motion for Appointment as Lead Plaintiff and Approval of Selection of Co-Lead Counsel.

Neither of the opposition briefs filed have come close to rebutting the PSLRA's strong presumption in favor of appointing the BLI Investors – who have the largest financial interest and satisfy Rule 23's typicality and adequacy requirements – as lead plaintiff in this Action.

Only two other competing lead plaintiff movants remain before the Court: (i) Michael Damelio ("Damelio") (ECF No. 52); and (ii) Pompano Beach Police & Firefighters' Retirement System ("Retirement System") (ECF No. 53). Damelio claims that he has the largest financial interest in the Action, but as discussed at length in the BLI Investors' Opposition ("Opposition") (ECF No. 54), Damelio is wrong. Damelio improperly included $31,237 in losses from a joint account for which he has now twice failed to demonstrate sole standing to act on behalf, or the consent, of the undisclosed co-account holder to pursue these claims. Accordingly, the losses from that joint account must be excluded from his asserted financial interest, leaving him with $93,111 – significantly less than the uncontested $117,381 financial interest of the BLI Investors. Additionally, Damelio fails to meet Rule 23's typicality and adequacy requirements for a host of reasons detailed in the Opposition.

The Retirement System – which has the lowest financial interest among the remaining movants – has already acknowledged, as it must, that it is not the presumptive lead plaintiff in this Action. Nevertheless, it filed an opposition brief anyway. In its opposition, the Retirement System oddly ignores the disqualifying flaws with Damelio's motion and appears to advocate for Damelio's appointment, while gratuitously (and ineffectively) attacking the grouping of the BLI Investors. The Retirement System's "opposition" raises questions about whether counsel for the Retirement System has an undisclosed agreement with counsel for Damelio. Regardless, the Retirement System's attack on the BLI Investors' small, cohesive group is meritless. As detailed at length in the Opposition and below, the PSLRA expressly allows groups to serve as lead plaintiffs, and this Court and others have repeatedly appointed small, cohesive groups like the BLI Investors. The BLI Investors are a

prototypical small and adequate group – consisting of a husband (director of operations at an IT company) and wife (software analyst) and a software engineer – all with investing experience and a detailed plan for litigating this action, including a mechanism to solve any potential decision-making deadlock that may arise. *See* ECF No. 38-4 ¶¶ 3, 8, 12, 17-18. The mere fact that the BLI Investors moved in a group is not a disqualifying factor.

The PSLRA requires proof – not speculation – to rebut the strong presumption in favor of the movant with the largest financial interest (here, the BLI Investors). *See* 15 U.S.C. § 78u-4. As explained, neither the Retirement System nor Damelio have come close to providing proof rebutting the BLI Investors' presumptive lead plaintiff status.

Accordingly, the Court should grant the BLI Investors' motion in full and deny all other competing motions.

## ARGUMENT

## I.    THE BLI INVESTORS ARE THE PRESUMPTIVE LEAD PLAINTIFF

### A.    The BLI Investors Have the Largest Financial Interest

Under the PSLRA, the presumptive lead plaintiff is the "person or group of persons" who suffered the largest financial interest and satisfies Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "The court must examine lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) (courts are to appoint as lead plaintiff the person or group of persons with "the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23"). Here, the BLI Investors, which suffered losses of $117,381, have the largest financial interest in this Action.

As detailed in the BLI Investors' Opposition, Damelio may have claimed larger losses in his moving papers, but those losses are improperly inflated. Damelio included losses from a joint account whose co-owner he still has not revealed. Further, Damelio still has not demonstrated that he has sole standing or the joint account-holder's consent to pursue these claims. Accordingly, the losses from this joint account cannot be included in Damelio's financial interest, thereby reducing Damelio's claimed

losses from $124,309 to $93,111, which is substantially below the financial interest of the BLI Investors.

In addition, Damelio suffers from numerous other disqualifying Rule 23 vulnerabilities, including signing a certification that claims he reviewed a complaint in this Action two months before the Complaint was filed, moving on behalf of the wrong class, and not including sufficient information about himself. Opposition 7-10. The fact that Damelio signed his certification in connection with an unfiled complaint violated the PSLRA and subjects Damelio to unique defenses precluding his appointment as lead plaintiff. Whether Damelio later read the filed complaint is beside the point. The PSLRA requires a lead plaintiff movant to review the filed complaint when signing his certification for a reason — to ensure that the lead plaintiff movant knows precisely what the case is about. What the complaint drafted (but never filed) by his counsel contained is unknown. Defendants will inevitably seize on these issues at class certification to the detriment of the class.

The Retirement System suspiciously ignored all of these issues, each of which (and all the more, collectively) disqualify Damelio as inadequate beyond the fact that he lacks the largest financial interest.[1]

### B.   The BLI Investors Satisfy the *Prima Facie* Requirements Of Rule 23 and Are A Proper Group Under the PSLRA

The Ninth Circuit in *In re Mersho* recently confirmed the PSLRA's plain language that lead plaintiff groups can serve as lead plaintiffs, and that pre-existing relationships between group members are not required. 6 F.4th 891, 902 (9th Cir. 2021). The test is "not one of relatedness;" rather, the test is whether the proposed group would "fairly and adequately protect the interests of the class." *Id*. The BLI Investors readily pass this test as their Joint Declaration describes their small size (effectively two members), their sophistication and business backgrounds, their cohesion, their specific plans regarding how to litigate the case and monitor counsel, and their mechanism to address any disagreements. *See*

---

[1] Damelio should not be permitted to belatedly cure his numerous substantive deficiencies on reply. *Cf. Perez v. Hexo Corp.*, No. 19 Civ. 10965 (NRB), 2020 WL 905753, at *3 (S.D.N.Y. Feb. 20, 2020), *reconsideration denied sub nom. In re HEXO Corp. Sec. Litig.*, No. 19 Civ. 10965 (NRB), 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020).

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE BERKELEY LIGHTS INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL

ECF No. 38-4 ¶¶ 3, 8, 12, 16-18. *See also In re Aqua Metals Sec. Litig.*, No. 17-cv-07142-HSG, 2018 WL 4860188, at *4-5 (N.D. Cal. May 23, 2018) (this Court stated that the "PSLRA itself permits groups of persons to serve as lead plaintiff . . . and has held that a group of previously-unrelated investors may show that it is an adequate class representative"; appointing group that submitted joint declaration attesting to, among other things, "commit[ment] to maximiz[e] recovery" and "vigorously prosecute[]" the action, communicate with each other, and make themselves available for depositions and other necessary meetings or hearings"); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *5 (N.D. Ca. June 10, 2014) ("[s]mall, cohesive groups . . . are routinely appointed as lead plaintiff in securities actions"; appointing group that "submitted declarations . . . professing the readiness and willingness to serve as a representative party on behalf of the class" and stating they would work together in the type of declaration courts have found "demonstrative of a movant group's adequacy as lead plaintiff"); *In re Versata, Inc.*, No. C 01-1439 SI, 2001 WL 34012374, at *4-5 (N.D. Cal. Aug. 20, 2001) (appointing small group and holding that "small groups, whether or not they have any pre-litigation relationship, can aggregate their financial losses," as "[r]equiring a pre-litigation relationship, though appealing in its simplicity, is too rigid" and the group "is what the PSLRA contemplated as effective class plaintiffs").

In an ineffective attempt to rebut the PSLRA's "strong" presumption in the BLI Investors' favor, the Retirement System attempts to explain away this Court's repeated finding that small, cohesive groups are adequate under Rule 23. First, the Retirement System claims the movant group in *Aqua Metals* had a more detailed joint declaration. That claim is false. In *Aqua Metals*, the Court noted several statements from the group's joint declaration as indicating cohesion, statements also made in the BLI Investors' Joint Declaration. Both the BLI Investors and the *Aqua Metals* investor group stated that the members are committed to maximizing the recovery for the class, will oversee the litigation, note the importance of a decision-making structure, and agree to regular communication and periodic updates from counsel. *In re Aqua Metals*, No. 4:17-07142, 2018 WL 4860188, at *4; ECF No. 38-4 ¶¶ 7, 11, 13, and 17-18.

In fact, the BLI Investors' Joint Declaration is more robust than what was submitted in *Aqua Metals*. For example, the BLI Investors have agreed to a specific schedule of quarterly reports on top

of the general periodic updates and necessary communication with counsel and agreed that if consensus is lacking, the member with the highest losses will have final decision-making power. In contrast, the group in *Aqua Metals* planned for a consensus and if one was not reached, the group agreed to be bound by the decision of an independent arbitrator. ECF No. 38-4 ¶¶ 17-18; *In re Aqua Metals*, 2018 WL 4860188, at *4. Thus, the Retirement System's attempt to distinguish *Aqua Metals* does not rebut the strong presumption in favor of the BLI Investors.[2]

The Retirement System also tries to analogize the BLI Investors to the movant group this Court declined to appoint in *Markette v. Xoma*, 2016 WL 2902286, *8 (N.D. Cal. May 13, 2016). However, *Xoma* was very different. First, this Court stated in *Xoma* that "[i]n the Court's view, it would read too much into the PSLRA's purpose to categorically bar aggregation [by a group]." Additionally, this Court held that "[r]equiring a pre-litigation relationship, though appealing in its simplicity, is too rigid; it is not the only way, or necessarily the best way, to ensure that the lead plaintiffs will actively represent the interests of the purported class." *Id*. at *8. Second, in *Xoma*, this Court denied the lead plaintiff role to a prospective group because its joint declaration failed to mention the investors' level of sophistication, the decision-making structure of the group, or establish a specific plan for communicating throughout the course of the litigation. *Id.* at *9.

Here, in contrast, the BLI Investors addressed all of these concerns. *See* ECF No. 38-4 at ¶¶ 3, 12 (discussing the BLI Investors' commitment to providing fair and adequate representation, overseeing counsel, and obtaining the largest possible recovery against all culpable parties consistent with good faith and vigorous advocacy); *id*. at ¶¶ 17-21 (discussing their commitment to ensuring the litigation is managed effectively by communicating with each other, including creating a quarterly

---

[2]  The Retirement System notes that several other decisions by this Court allowing groups were unopposed. The Retirement System misses the point. Even where a group is unopposed, a court would not appoint it unless it was adequate. Thus, these citations further demonstrate that small, cohesive groups can be adequate lead plaintiffs. *See Mulquin v. Nektar Therapeutics*, 2019 WL 1170774, at *3 (N.D. Cal. Mar. 13, 2019) (finding a group would "fairly and adequately protect the interests of the class" sufficient to establish typicality and adequacy); *In re NVIDIA Corp. Sec. Litig.*, 2019 WL 1960341 (N.D. Cal. May 2, 2019) (same); *Vataj v. Johnson*, 2020 WL 532981 (N.D. Cal. Feb. 3, 2020) (same).

communication plan on top of regular updates); *id*. at ¶ 18 (creating a clear decision-making plan in case of any disagreements among group members).[3]

Finally, contrary to the Retirement System's argument, while the PSLRA does favor institutional investors, it clearly does not dictate that courts should automatically appoint institutional investors with a smaller financial interest.[4]  Indeed, the Ninth Circuit has made this crystal clear.  *See In re Cavanaugh*, 306 F.3d 726, 736 n.20 (9th Cir. 2002) ("If financial sophistication had been Congress's principal concern, it would not have made the plaintiff who lost the most money the

---

[3]  The Retirement System's other citations – some of which are out of this Circuit – fare no better.  In *Eichenholtz v. Verifone Holdings, Inc.*, a group of institutional investors were not appointed lead plaintiff because their joint declaration stated that the group would exercise "joint decision-making," which was "simply one vote per constituent entity, independent of the number of shares held by the entity."  2008 WL 3925289, *9 (N.D. Cal. Aug. 22, 2008).  In contrast, the BLI Investors agreed that in the case of a disagreement, "Mr. Saini, as representative of the movant (Connectra) with the largest loss, will have the final decision in the matter."  ECF No. 38-4 at 18.  Similarly, in *In re Gemstar TV Guide International, Inc. Securities Litigation*, 209 F.R.D. 447, 452 (C.D. Cal. 2002), the disqualified group was made up of *seven* unrelated investors whose only decision-making strategy was to reach a consensus.  *Id*. at 451.  The court found that the lack of preparation for any in-group disagreements made the group inadequate for appointment as lead plaintiff.  *Id*. at 451.  The BLI Investors' Joint Declaration directly addresses this concern.  ECF No. 38-4 at 18.  In *In re Cloudera, Inc. Securities Litigation*, the court declined to appoint the institutional investor movant group because their joint declaration "provided no detail whatsoever about any decision making process."  2019 WL 6842021, *7 (N.D. Cal. Dec. 16, 2019).  As previously established, the BLI Investors have a clear decision-making plan where the group intends to reach a consensus but if it cannot, the member with the largest loss, Connectra (Arsh Saini), will have final decision-making authority.  ECF No. 38-4 ¶18.  *See also Pardi v. Tricida, Inc.*, 2021 WL 1381271, at *2 (N.D. Cal. Apr. 2, 2021) (finding a lack of group cohesion after one of the group-members also moved for appointment as lead plaintiff in an individual capacity with different counsel).

[4]  If Congress wanted an institutional investor to automatically trump a lead plaintiff movant with a larger financial interest simply by virtue of its institutional status, it would have said so in the PSLRA.  It did not.  And the Retirement System's citations to cases in support of its position that institutional investors have pride of place are all distinguishable from the facts here.  *See Koffsmon v. Green Dot Corp.*, 2021 WL 3473975, at *5 (C.D. Cal. Aug. 6, 2021), *recons. denied by* 2022 WL 170636 (C.D. Cal. Jan. 19, 2022) (deciding between a group of institutional investors and a single institutional investor); *Lloyd v. CVB Fin. Corp.*, 2011 WL 13128303, at *5 (C.D. Cal. Jan. 21, 2011) (appointing an institution because it had the "largest financial stake in this litigation - the most important factor in choosing a lead plaintiff"); *Tumolo v. Cymer, Inc.*, 1999 WL 1567741, at *2 (S.D. Cal. Jan. 22, 1999) (declining to appoint a group of 339 unrelated investors but stating that "a small subset of meaningful investors would likely be a much more appropriate candidate").

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE BERKELEY LIGHTS INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL

presumptive lead plaintiff").[5]   Because the BLI Investors have the largest financial interest of all remaining movants, the BLI Investors are the presumptive lead plaintiff, and there is no reason to supplant the BLI Investors with a movant with a significantly smaller financial interest simply because it is an institution.[6]

For these reasons, the BLI Investors are an appropriate lead plaintiff group.  Because the BLI Investors have the largest financial interest and satisfy the relevant Rule 23 requirements, it is entitled to the PSLRA's strong presumption that it is the most adequate plaintiff to lead this action.

## II.   THE RETIREMENT SYSTEM HAS THE LOWEST FINANCIAL INTEREST OF THE REMAINING MOVANTS; THUS, ITS ATTACK ON THE BLI INVESTORS IS SUSPICIOUS

The Retirement System, which has the lowest losses of all three remaining movants, filed an opposition that raises questions.  It is unusual for the last place movant to go through the effort of filing an opposition brief unless it can show that each of the movants with a larger loss is inadequate or atypical.  *In re Cavanaugh*, 306 F.3d at 732.  Here, the Retirement System makes no mention of the extensive, significant, and obvious issues rendering Damelio unfit to serve in a representative capacity; instead, it ineffectively attacks the grouping of the BLI Investors.  ECF No. 53 at 1-2.  Thus, rather

---

[5]  *See also Mohanty v. Bigband Networks, Inc.*, 2008 WL 426250, at *6 (N.D. Cal. Feb. 13, 2008) ("a plaintiff's mere status as an institutional investor does not provide any presumption that the institutional plaintiff is a more adequate lead plaintiff than an individual investor with a larger financial interest"); *Steiner v. Aurora Foods Inc.*, 2000 WL 33911305, at *3 (N.D. Cal. June 5, 2000) ("[T]he PSLRA does not limit the presumption of most adequate plaintiff to institutional investors.  Rather, the statute merely provides that the person or group of persons with the largest financial interest in the relief sought by the class is entitled to the presumption of most adequate plaintiff."); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 821-822 (N.D. Oh. Aug. 25, 1999) ("The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor.").

[6]  The BLI Investors' financial interest is substantially larger than that of the Retirement System.  *See* Opposition at 4 (BLI Investors' financial interest is $117,360 – approximately 20% larger than the Retirement System's $97,396 financial interest).  As the Ninth Circuit has noted, the PSLRA states that if the movant or movant group with the largest financial interest satisfies Rule 23, that is the end of the inquiry.  The court examines the rest of the lead plaintiff movants "if and only if the presumptive lead plaintiff is found inadequate or atypical."  *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).  No such showing has been made here.  Thus, there is no reason to disaggregate the losses of the BLI Investors as the Retirement System self-servingly suggests – particularly where the Retirement System abdicated its role as guardian for the proposed class' interests by failing to raise any of the serious issues plaguing Damelio.

7                      Case No. 4:21-cv-09497-HSG

than act like a watchdog for the proposed class, the Retirement System has raised suspicion of an undisclosed side agreement among counsel for the Retirement System and counsel for Damelio – a factor that further militates against appointing either one of them as lead plaintiff.

## CONCLUSION

For these reasons, and those given in their earlier submissions, the BLI Investors respectfully request that the Court: (1) appoint the BLI Investors as Lead Plaintiff for the Class in the Action; (2) approve BES and Bernstein Liebhard as Co-Lead Counsel for the Class; and (3) deny all other competing motions.

Dated: March 1, 2022

Respectfully submitted,

**BRAGAR EAGEL & SQUIRE, P.C.**

*/s/ Melissa A. Fortunato*
Melissa A. Fortunato (SBN #319767)
Marion C. Passmore (SBN #228474)
**BRAGAR EAGEL & SQUIRE, P.C.**
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 568-2124
Facsimile: (212) 214-0506
Email: fortunato@bespc.com
        passmore@bespc.com

*Counsel for the BLI Investors and Proposed Co- Lead Counsel for the Class*

**BERNSTEIN LIEBHARD LLP**

Laurence J. Hasson
Joseph R. Seidman, Jr.
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
Email: lhasson@bernlieb.com
        seidman@bernlieb.com

*Counsel for the BLI Investors and Proposed Co- Lead Counsel for the Class*