MUNGER, TOLLES & OLSON LLP
John W. Spiegel (SBN 78935)
John M. Gildersleeve (SBN 284618)
Lauren C. Barnett (SBN 304301)
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702
*john.spiegel@mto.com*
*john.gildersleeve@mto.com*
*lauren.barnett@mto.com*

Attorneys for Defendants Berkeley Lights,
Inc., Eric D. Hobbs, Shaun M. Holt, Kurt
Wood, Igor Khandros, Michael Marks,
Sarah Boyce, Gregory Lucier, Michael
Moritz, Elizabeth Nelson, James Rothman,
Ming Wu, and Makoto Shintani

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| VICTOR J. NG, Individually and on Behalf of All Others Similarly Situated, | Case No.  4:21-cv-09497-HSG |
| Plaintiff, | CLASS ACTION |
| v. | **REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| BERKELEY LIGHTS, INC., et al. | Filed concurrently: |
| Defendants. | - Reply in Support of Request for Judicial Notice and to Consider Incorporated Documents |
| | Judge:  Hon. Haywood S. Gilliam, Jr. |
| | Date:    March 16, 2023 |
| | Time:    2:00 p.m. |
| | Ctrm:    2 |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...............................................................................................................1

II.  THE EXCHANGE ACT CLAIMS FAIL ...........................................................................2

    A.   No Pleaded Facts Show a False or Misleading Statement .........................................2

        1.   The Scorpion Report Is Unreliable as a Matter of Law ...............................2

        2.   Plaintiffs Do Not Plead Any Actionable Statements ....................................6

    B.   No Pleaded Facts Support a "Strong Inference" of Scienter....................................10

    C.   No "Revelation" of "Truth" Caused the Alleged Loss ...........................................12

III. THE SECURITIES ACT CLAIMS AND CONTROL-PERSON CLAIMS FAIL .............13

IV.  CONCLUSION .................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021)................................................................................................11

*In re AnaptysBio, Inc.*,
  2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) ...................................................................12

*Applestein v. Medivation, Inc.*,
  561 F. App'x 598 (9th Cir. 2014).................................................................................3, 11

*Berg v. Velocity Fin., Inc.*,
  2021 WL 268250 (C.D. Cal. Jan. 25, 2021)......................................................................15

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008).............................................................................................11

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020)...........................................................................1, 2, 12, 13

*Costabile v. Natus Med. Inc.*,
  293 F. Supp. 3d 994 (N.D. Cal. 2018) ................................................................................8

*Curry v. Yelp Inc.*,
  875 F.3d 1219 (9th Cir. 2017).....................................................................................10, 11

*In re DraftKings Inc. Sec. Litig.*,
  2023 WL 145591 (S.D.N.Y. Jan. 10, 2023).................................................................1, 3, 4

*Dura Pharms, Inc. v. Broudo*,
  544 U.S. 336 (2005) ..........................................................................................................13

*In re Eargo, Inc. Sec. Litig.*,
  2023 WL 1997918 (N.D. Cal. Feb. 14, 2023).....................................................................9

*Einhorn v. Axogen, Inc.*
  42 F.4th 1218 (11th Cir. 2022)..........................................................................................10

*Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.*,
  2021 WL 4199273 (N.D. Cal. Sept. 15, 2021)..................................................................10

*Garcia v. J2 Global, Inc.*,
  2021 WL 1558331 (C.D. Cal. Mar. 5, 2021) ....................................................................13

*In re GeoPharma, Inc. Sec. Litig.*,
  399 F. Supp. 2d 432 (S.D.N.Y. 2005) ...............................................................................10

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Grigsby v. BofI Holding*, Inc.
  979 F.3d 1198 (9th Cir. 2020)........................................................................................2

*Hampton v. Aqua Metals, Inc.*,
  2020 WL 6710096 (N.D. Cal. Nov. 16, 2020)........................................................7, 11, 12

*Hershewe v. JOYY Inc.*,
  2021 WL 6536670 (C.D. Cal. Nov. 5, 2021) ..........................................................3, 5, 6

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000)......................................................................................15

*Hunt v. Bloom Energy Corp.*,
  2021 WL 4461171 (N.D. Cal. Sept. 29, 2021)..............................................................14

*Hurst v. Enphase Energy, Inc.*,
  2021 WL 3633837 (N.D. Cal. Aug. 17, 2021)................................................................9

*In re Intrexon Corp. Sec. Litig.*,
  2017 WL 732952 (N.D. Cal. Feb. 24, 2017)..................................................................5

*Iron Workers Loc. 580 Joint Funds v. NVIDIA Corp.*,
  522 F. Supp. 3d 660 (N.D. Cal. Mar. 2, 2021)............................................................11

*Kim v. Allakos Inc.*,
  2022 WL 976974 (N.D. Cal. Mar. 31, 2022) ................................................................5

*Kong v. Fluidigm Corp.*,
  2021 WL 3409258 (N.D. Cal. Aug. 4, 2021).................................................................8

*In re LexinFintech Holdings Ltd. Sec. Litig.*,
  2021 WL 5530949 (D. Or. Nov. 24, 2021) ....................................................................5

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016)........................................................................................6

*Long Miao v. Fanhua, Inc.*,
  442 F. Supp. 3d 774 (S.D.N.Y. 2020) ...........................................................................5

*In re Lyft Inc. Sec. Litig.*,
  484 F. Supp. 3d 758 (N.D. Cal. 2020) ....................................................................14, 15

*Mallen v. Alphatec Holdings, Inc.*,
  861 F. Supp. 2d 1111 (S.D. Cal. 2012) .........................................................................8

*Mart v. Tactile Sys. Tech., Inc.*,
  595 F. Supp. 3d 788 (D. Minn. 2022) ...........................................................................4

-iii-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Masterson v. Cheetah Mobile Inc.*,
2018 WL 5099505 (C.D. Cal. June 27, 2018).............................................................................3

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018)..............................................................................................13

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022)....................................................................................... passim

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020)................................................................................................6

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) ....................................................................14

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
2018 WL 3126393 (N.D. Cal. June 26, 2018) ....................................................................12

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014)................................................................................................6

*Pino v. Cardone Cap., LLC*,
2021 WL 3502493 (C.D. Cal. Apr. 27, 2021)....................................................................14

*Pino v. Cardone Cap., LLC*,
55 F.4th 1253 (9th Cir. 2022)............................................................................................15

*Pirani v. Slack Techs., Inc.*,
445 F. Supp. 3d 367 (N.D. Cal. 2020) ...............................................................................15

*In re Plantronics, Inc. Sec. Litig.*,
2022 WL 3653333 (N.D. Cal. Aug. 17, 2022)...................................................................12

*Police & Fire Ret. Sys. of Detroit v. Axogen, Inc.*,
2020 WL 13547449 (M.D. Fla. Apr. 21, 2020) ..............................................................5, 10

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014).....................................................................................7, 8, 11

*Primo v. Pac. Biosciences of Cal., Inc.*,
940 F. Supp. 2d 1105 (N.D. Cal. Apr. 15, 2013) ...............................................................14

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017)..............................................................................................8

*In re QuantumScape Sec. Class Action Litig.*,
580 F. Supp. 3d 714 (N.D. Cal. 2022) ...............................................................................4

-iv-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014)..................................................................................................7

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017)................................................................................................7

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012)................................................................................................14

*Rubke v. Cap. Bancorp Ltd.*,
551 F.3d 1156 (9th Cir. 2009)..............................................................................................14

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008)................................................................................................11

*In re Secure Computing Corp. Sec. Litig.*,
120 F. Supp. 2d 810 (N.D. Cal. 2000) ...................................................................................8

*In re Splunk Sec. Litig.*,
592 F. Supp. 3d 919 (N.D. Cal. Mar. 21, 2022).....................................................................7

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002)................................................................................................6

*In re Velti PLC Sec. Litig.*,
2015 WL 5736589 (N.D. Cal. Oct. 1, 2015)........................................................................15

*Webb v. SolarCity Corp.*,
884 F.3d 844 (9th Cir. 2018)................................................................................................12

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021)................................................................................................7

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)..................................................................................................3

**FEDERAL STATUTES**

Securities Exchange Act....................................................................................1, 10, 13, 14

Securities Act .....................................................................................................1, 13, 14, 15

**FEDERAL RULES**

Rule 8 ....................................................................................................................................14

Rule 9(b)................................................................................................................................14

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

**FEDERAL REGULATIONS**

17 C.F.R. § 229.105 ............................................................................................................15

17 C.F.R. § 229.303(b)(2)(ii) ............................................................................................14

## I.    INTRODUCTION

In place of well-pleaded factual allegations, the Opposition asks the Court to accept the hyperbole of "Scorpion Capital"—a short seller with no professional obligations to the Court and an undisputed motive to harm BLI's stock price.  Citing unidentified individuals (whom it paid), Scorpion called BLI's instrument "a lemon."  Opp. 1.  Parroting this "scathing" criticism, Plaintiffs call BLI's instrument "virtually nonfunctional."  *Id.*  Yet Plaintiffs' counsel does not claim to have spoken with a single one of the unidentified customers or ex-employees on whom Plaintiffs rest their "theory of Defendants' fraud."  *Id.* 14.  Plaintiffs allege no facts showing when the purported employees worked at BLI, or for how long, or even what their titles were.  Instead, Plaintiffs argue that the Scorpion report's "confidential witness statements," *id.* 7, 9, meet the Ninth Circuit's stringent reliability requirements because *Scorpion* said it "believes" the individuals "are reliable" and *Scorpion* said its "opinions are held in good faith," *id.* 45.  But Scorpion declined to "provide any representations or warranties with respect to the accuracy" of the information it released into the market to its direct financial benefit.  Ex. A at 2.

The Ninth Circuit does not permit fashioning securities claims from unreliable short-seller criticism.  *See In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 833-34 (9th Cir. 2022); *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 797 (9th Cir. 2020).  Such claims are routinely dismissed.  *See* Mot. at 6-7.  The Opposition fails to show that this case deserves any different fate.  Plaintiffs do not, and cannot, dispute that they "extracted and pled as true statements from a report by a short seller attributing adverse facts to unidentified persons"—and that "global deficiency" is "ultimately fatal" to their claims.  *In re DraftKings Inc. Sec. Litig.*, 2023 WL 145591, at *18-19 (S.D.N.Y. Jan. 10, 2023).

In any event, the Opposition confirms that Plaintiffs fail to challenge statements that could support liability under the Exchange Act or the Securities Act.  Plaintiffs argue that BLI portrayed its product as "superior" when it allegedly was "not actually superior."  Opp. 12.  But that is the essence of non-actionable puffery and statements of opinion.  Other statements about future revenue and opportunities are protected by the safe harbor and bespeaks caution doctrine.  For these and other reasons, the Court should dismiss the Complaint with prejudice.

-1-

## II.    THE EXCHANGE ACT CLAIMS FAIL

### A.    No Pleaded Facts Show a False or Misleading Statement

#### 1.    The Scorpion Report Is Unreliable as a Matter of Law

Plaintiffs do not dispute that Scorpion was "short Berkeley Lights," Ex. A at 2, meaning it was no impartial observer but rather a market participant with "a financial incentive to convince others to sell." *BofI*, 977 F.3d at 797. Plaintiffs also concede that *Nektar* and *BofI*—cases in which the Ninth Circuit rejected securities claims based on short-seller opinions—are binding precedent. Opp. 10, 44. Nevertheless, Plaintiffs argue that their allegations channeling Scorpion's unreliable opinions may proceed. Each of Plaintiffs' arguments fails.

*First*, Plaintiffs inexplicably argue that Scorpion "does not, as was the case in *Nektar* and *BofI*, disavow the accuracy of its findings." *Id*. 44. Scorpion did just that. It warned that it "cannot and does not provide any representations or warranties with respect to the accuracy" of any source that it cited, or of any of the "information" that a source provided and Scorpion relayed. Ex. A at 2; *see id.* (warning that information may be "inaccurate, incomplete or otherwise prejudiced" or "outdated"). Scorpion's disclaimers match nearly word-for-word those in *Nektar* and *BofI*. *See Nektar*, 34 F.4th at 834 ("The Plainview Report also contained a disclaimer that its authors 'make no representation, express or implied, as to the accuracy, timeliness, or completeness of any such information' in this article."); *BofI*, 977 F.3d at 797 (citing "disclaimers from the authors stating that they made 'no representation as to the accuracy or completeness of the information set forth in this article'"). Plaintiffs argue that Scorpion's "belief that [its] opinions . . . were made in 'good faith'" and that its sources were "reliable," Opp. 44-45, undoes its disclaimers. But Scorpion did not suggest its disclaimers were negated. On the contrary, it followed the phrases Plaintiffs cite with the words "but" and "[h]owever" and then the elaborate disclaimers. Ex. A at 2. Underscoring its disclaimers, Scorpion even warned investors "to do your own research." *Id.*; *see Grigsby v. BofI Holding, Inc.* 979 F.3d 1198, 1208 (9th Cir. 2020) (affirming dismissal in part because short seller "'[made] no representation as to the accuracy or completeness of the information'" and "encouraged investors to do their own research").

*Second*, Plaintiffs concede that the "confidential witness statements" cited by Scorpion must

-2-

meet the Ninth Circuit's reliability standard, Opp. 9 (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009)), but fail to show that standard is met. Plaintiffs concede their falsity allegations "rely on sales, marketability, and product defect information provided to Scorpion Capital" by purported former employees and customers. *Id.* 10. Yet Scorpion does not say over what periods of time those individuals worked at BLI or interacted with BLI technology, or what their titles or specific responsibilities were. Naturally, therefore, Plaintiffs cannot describe them with "the requisite particularity to establish that certain statements of these confidential witnesses are based on the witnesses' personal knowledge." *Zucco*, 552 F.3d at 996. Despite calling the sources "credible," Opp. 10, Plaintiffs offer only sight-unseen deference to Scorpion. *E.g.*, *id*. 1 ("Kahlon explained and defended the Report's methodologies"). Plaintiffs do not claim that their counsel spoke with the sources, obtained any affidavits, or otherwise investigated who they were or what they said. *See DraftKings*, 2023 WL 145591, at *20 (counsel did not "confirm[] *any* of the attributions to unnamed sources"). Presumably, counsel was "unable to do so." *Id.*

In place of reliability, the Opposition offers guesswork. Confessing that they cannot plead basic information like whether Scorpion's interviews even "pre-date or post-date the IPO," Plaintiffs instead suggest that the Court assume they occurred at certain times or that timing should not matter. Opp. 30 n.19. Ninth Circuit law does not require the Court to fill in blanks. *See, e.g.*, *Applestein v. Medivation, Inc.*, 561 F. App'x 598, 600 (9th Cir. 2014) (affirming dismissal where "complaint fails to allege with requisite particularity the job titles and responsibilities of the CWs"); *Masterson v. Cheetah Mobile Inc.*, 2018 WL 5099505, at *2 (C.D. Cal. June 27, 2018) (rejecting reliance on short-seller report quoting anonymous former employee without pleading employee's position, tenure, and personal knowledge of issues). Ultimately, Plaintiffs argue that what the individuals purportedly told Scorpion "shows that [they] held relevant roles," Opp. 8, but that backwards notion would read Plaintiffs' burden to establish reliability out of the law.

Nor does the Opposition cite facts "corroborat[ing] witness claims regarding the Beacon's defects." *Id*. 9; *see Hershewe v. JOYY Inc.*, 2021 WL 6536670, at *5 (C.D. Cal. Nov. 5, 2021) ("Muddy Waters did not corroborate its core conclusions . . . with an independent investigation or signed, named affidavits from corporate insiders."). The only "facts and documents" Plaintiffs cite

-3-

are "publicly reported product revenues" and a purported absence of academic articles, Opp. 9, neither of which shows that the Beacon was "virtually nonfunctional" and "a nonviable product," *id.* 1, 15. The decisions cited by Plaintiffs confirm that this purported corroborating evidence is insufficient. In *Mart v. Tactile Systems Technology, Inc.*, 595 F. Supp. 3d 788 (D. Minn. 2022), the short-seller report appended copies of pre-filled prescriptions, which directly supported allegations that employees "sent pre-filled documents to physicians." *Id.* at 806. In *In re QuantumScape Securities Class Action Litigation*, 580 F. Supp. 3d 714 (N.D. Cal. 2022), the short-seller report was corroborated by an independent assessment by an expert with "a Ph.D. in material physics" that was "littered with factual assertions that purport to show that QuantumScape's own factual assertions are incorrect." *Id.* at 727, 731; *see* Opp. 8 (citing decision as purportedly "credit[ing]" Scorpion). *QuantumScape* also is incompatible with the Ninth Circuit's later opinion in *Nektar*, insofar as the court deferred what it called Scorpion's "serious credibility issues" for a "factfinder" after the pleading stage. 580 F. Supp. 3d at 731.

*DraftKings* is particularly instructive. As here, the complaint relied on a short-seller report "for almost all of its factual allegations." 2023 WL 145591, at *3. Like the Scorpion report, the report "was largely based on unsourced or anonymously sourced allegations" and did not "specify these employees' positions, length of employment, location of employment, or their respective roles or sources of knowledge." *Id.* at *18-19. The court dismissed all claims, calling it a "threshold" defect that the "unidentified and unspecified" sources "suffer from all the indicia of unreliability that have led courts often not to credit attributions to unnamed sources in short-seller reports." *Id.* The court explained that filtering such allegations through a short seller is no shortcut to a well-pleaded claim—rather, it invites *greater* scrutiny, because a short seller has "an economic interest in driving down the company's stock price" and "is not an attorney with professional obligations to the Court, such as that under [Rule] 11(b) to certify that a pleading's averments were the product of an inquiry reasonable under the circumstances." *Id.*

*Third*, Plaintiffs' argument that the report was not "anonymous" because Scorpion was "founded and led by Kir Khalon," Opp. 1, 7, adds nothing. Even if "Scorpion Capital, under the direction of Mr. Kahlon, conducted research interviews," *id.* 8, Khalon's name is not in the report.

-4-

Its author was "Scorpion Capital LLC," making it anonymous under Ninth Circuit law. *See Nektar*, 34 F.4th at 833-34 (report "dubbed the Plainview Report" was by "anonymous short-sellers"); *In re LexinFintech Holdings Ltd. Sec. Litig.*, 2021 WL 5530949, at *15 & n.12 (D. Or. Nov. 24, 2021) (rejecting argument "that Grizzly is not 'anonymous' because the Grizzly website identifies its owner and operator, Siegfried G. Eggert"); *In re Intrexon Corp. Sec. Litig.*, 2017 WL 732952, at *1 (N.D. Cal. Feb. 24, 2017) (referring to "anonymous short-seller named Spotlight Research").

In any event, Plaintiffs miss the relevance of authorship. Attributing the report to Khalon personally *confirms* its unreliability because Plaintiffs do not claim he worked at BLI, or even in its industry, or that he has personal knowledge of anything. Like Scorpion, Kahlon lacks "sufficient expertise in the specific subject matter at issue." *Hershewe*, 2021 WL 6536670, at *5. Plaintiffs attempt to bolster his credibility by arguing that he worked at a short-seller firm called Seligman Investments. ¶ 32. But every securities class action that counsel has been able to find based on a Seligman report, including reports raising allegations resembling those here, has been dismissed. *See Kim v. Allakos Inc.*, 2022 WL 976974, at *1 (N.D. Cal. Mar. 31, 2022) (dismissing claims based on report titled "A Suspect Biotech with a Phase 2 Farce, Incredulous Trial Investigators, and Warning Signs of Potential Fraud"); *Police & Fire Ret. Sys. of Detroit v. Axogen, Inc.*, 2020 WL 13547449, at *3 (M.D. Fla. Apr. 21, 2020) (dismissing claims based on report citing "interviews of unidentified former Axogen employees . . . as well as distributors" and claiming addressable market was overstated); *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 782 (S.D.N.Y. 2020) (dismissing claims based on report alleging self-dealing and related-party transactions).

*Fourth*, Plaintiffs try to distinguish *Nektar* as involving a "highly technical" short-seller report, Opp. 10, as if Scorpion's attempt to analyze alleged "severe design and performance issues" in flow cytometry technology were not technical, *id.* 1. But as Plaintiffs agree, the Ninth Circuit "found that the 'character' of a short seller report is what matters at the pleading stage." *Id.* 10. The Ninth Circuit did not define the "character" of a report by its degree of technicality. It held that "the character of the report—*anonymous and self-interested short-sellers who disavowed any accuracy*—rendered it inadequate." *Nektar*, 34 F.4th at 840 (emphasis added). The Scorpion report bears precisely the hallmarks of unreliability that lead courts routinely to dismiss similar claims.

-5-

### 2.   Plaintiffs Do Not Plead Any Actionable Statements

(a)   <u>The Product Statements Are Not Actionable</u>

Plaintiffs largely challenge non-actionable puffery—as the Opposition shows by arguing that BLI "emphasized the *purported superiority* of BLI's products," Opp. 1; "*hyped* the functionality of BLI's platform," *id.* 4; and made "*glowing* statements concerning the Beacon's *superior* functionality," *id.* 5; *see id.* 4 (highlighting as alleged misstatements "*the most advanced* environment," "*the best* cells," and "*the deepest* information")  (all emphasis added).  These kinds of vague, subjective statements are routinely held non-actionable.  *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206-07 (9th Cir. 2016) (statement that "'CVB's credit metrics are superior' to those of its peers" was "correct[ly]" dismissed as puffery); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1088-89 (9th Cir. 2002) (statement that "products were differentiated from competitors' products by their high quality and superior functionality" was not actionable based on "technological and performance shortcomings" because "the vagueness of these allegations needs no elaboration").

As Plaintiffs' cited cases recognize, statements that "were subjective and preceded by qualifiers, such as 'We believe,'" are generally non-actionable statements of opinion.  *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014).  Plaintiffs' conclusory argument that these and similar statements "did not fairly align with the information Defendants had," Opp. 14, fails to identify what the information was, who was aware of it, and when.  Plaintiffs likewise cite no facts supporting their argument that BLI's risk disclosure that it had experienced "reliability" challenges in the past, and may experience them again, was insufficient because BLI "knew that those risks had materialized" at some unspecified point in time.  *Id.* 15.

Nor do Plaintiffs plead facts showing that statements about BLI's platform were false or misleading in any event.  The Opposition argues that the Beacon was a "virtually nonfunctional" and "nonviable product" that "*always* suffered from numerous design and manufacturing defects."  *Id.* 1, 14, 15.  But these colorful, extreme characterizations are unsupported by pleaded facts.  *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020) (allegations were "high on alarming adjectives" but "short on the facts"); *Hershewe*, 2021 WL 6536670, at *8 ("[Complaint] . . . is 'long on sound, fury and speculation, but . . . short on specifics.'").  The Opposition highlights a

-6-

description of the Beacon's capabilities as including "[a]ccessing a high degree of cell biodiversity," "performing rapid functional characterization of tens of thousands of single cells in parallel," and "precisely controlling the environment." Opp. 11-13. But Plaintiffs show no contradiction between these statements and their generalized claim that the Beacon had "error rates" and "other problems." *Id.* 13; *see Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017) (alleged omissions not misleading as they "did not 'affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists'"). As the cases cited by Plaintiffs show, courts require actual contradictions to plead falsity. *Compare Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014) (calling corrosion rate "low" was misleading where rate was "the highest of three levels in BP's own internal classification metric"); *In re Splunk Sec. Litig.*, 592 F. Supp. 3d 919, 938-40 (N.D. Cal. Mar. 21, 2022) (stating that company was "still hiring" was misleading where company had implemented hiring freeze). The Opposition also ignores the pleaded fact that a number of BLI's customers acquired a second Beacon, ¶¶ 68, 115, which is inconsistent with the instrument being "virtually nonfunctional," Opp. 1.

                (b)      The Financial Statements Are Forward-Looking and Not Actionable

Although the Complaint appears to allege that BLI falsely reported periodic platform sales, placements, and revenue (*e.g.*, ¶¶ 81, 83, 85-86), the Opposition never argues that these statements were inaccurate—that is, that BLI did not sell products it reported selling, or make money it reported making. Plaintiffs' other challenges to financial statements fail as well.

                (i)      BLI's Revenue Guidance Is Not Actionable

As to statements about expected revenues for 2021 made after the IPO, Plaintiffs bypass Ninth Circuit authority holding that revenue guidance is forward-looking. *See* Mot. 15 (citing *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014)); *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *7 (N.D. Cal. Nov. 16, 2020) ("statements about production targets and revenue goals are plainly forward-looking"). Yet Plaintiffs essentially concede BLI's guidance was forward-looking, citing statements that BLI had "continued optimism" and "remained on track to meet its projected revenue." Opp. 16-18; *see Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021) ("Tesla's various statements that it was 'on track' to achieve this

-7-

goal . . . are likewise forward-looking statements"). Plaintiffs cite no statements about current or past facts within BLI's forward-looking revenue statements that make them "mixed." *Compare In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017) ("concrete description of the past and present state of the pipeline" was non-forward-looking); *Costabile v. Natus Med. Inc.*, 293 F. Supp. 3d 994, 1016 (N.D. Cal. 2018) (failure to disclose past payment default made increased revenue guidance misleading).[1]

Because the revenue guidance was forward-looking, Plaintiffs must plead that cautionary language was not "meaningful" to overcome the safe harbor and the bespeaks caution doctrine. Opp. 19. But on each call and earnings release, BLI explained that "material risks and uncertainties . . . could cause actual results or events to materially differ from those anticipated." *E.g.*, Ex. 22 at 4; *see Intuitive Surgical*, 759 F.3d at 1059 ("This cautionary language is virtually identical to the cautionary language approved in *Cutera*."). BLI incorporated risk disclosures that its revenue was "prone to quarterly fluctuations" and that "forecasts" depended on "our ability to generate revenue from the development of new workflows." Ex. 1 at 18, 27; *see Kong v. Fluidigm Corp.*, 2021 WL 3409258, at *9-10 (N.D. Cal. Aug. 4, 2021) (statements that "financial results and revenue growth rates have varied significantly from quarter-to-quarter" and these "fluctuations are due to numerous factors that are difficult to forecast" were "almost identical to language approved by the Ninth Circuit"). Nor do Plaintiffs plead facts showing that BLI issued guidance with actual knowledge of falsity, an independent port of the safe harbor. Plaintiffs argue, in hindsight, that earning $38 million in the first half of 2021 made clear that earning $90 million in the full year was "unrealistic." Opp. 18. But Plaintiffs do not show why earning 58% of annual revenue in half the year is not possible.

Plaintiffs likewise fail to show that stating that BLI's subscription programs and partnership agreements contributed to "strong" demand, and were intended to "broaden our customer base," was false or misleading. Plaintiffs claim BLI omitted "that these programs and agreements would not immediately generate material revenue like product placements." *Id*. 21. But Plaintiffs plead

---

[1] In other cases Plaintiffs cite, which long preceded *Tesla* in any event, courts granted motions to dismiss for failure to plead falsity. *See Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111 (S.D. Cal. 2012); *In re Secure Computing Corp. Sec. Litig.*, 120 F. Supp. 2d 810 (N.D. Cal. 2000).

-8-

that BLI disclosed that "some previously anticipated CapEx sales may transition to a subscription offering," which "could impact quarterly revenues in the near-term." ¶ 104. Plaintiffs further concede that CFO Wood warned that "the more subscription we do, as we talked about in the last call, the closer to the lower end of the [revenue guidance] range [we'll] be." ¶ 130. To the extent Plaintiffs challenge other statements about "[t]he purpose" of the new models and "opportunities" they might bring, Opp. 20, these statements are not only forward-looking and protected by the safe harbor, but also puffery and not objectively verifiable.

(ii)     Statements About TAM Are Not Actionable

Contrary to Plaintiffs' argument, BLI never called its "total addressable market" (TAM) of $23 billion an "estimate of future revenue" that "assumed a placement of seven $2 million Beacons at each and every one of BLI's potential 1,600 customers." Opp. 22, 24. Rather, BLI stated that its platform was "currently utilized . . . and marketed as research use only" and disclosed the belief that its capabilities, in the future, "will enable us to capture *an increasingly greater share* of our addressable market opportunity." Ex. 1 at 122 (emphasis added). Having estimated the theoretical market for antibody therapeutics, cell therapy, and synthetic biology as a whole, BLI expressed its hope to capture a greater portion of that whole—*not* 100% market share. That Scorpion considered BLI's TAM "astounding" does not make for a false statement. *See Hurst v. Enphase Energy, Inc.*, 2021 WL 3633837, at *4 (N.D. Cal. Aug. 17, 2021) (short-seller's differing "interpretation of the solar market, without more, does not plausibly allege a misstatement"); *see also In re Eargo, Inc. Sec. Litig.*, 2023 WL 1997918, at *8-9 (N.D. Cal. Feb. 14, 2023) ("statements about the size or importance of the FEHBP insurance market," such as "there are approximately 12 million adults in the United States over 50 years of age with both hearing loss and access to an existing hearing aid benefit," merely "convey optimism for business growth").

By arguing that TAM misled investors "about BLI's prospects," Opp. 22, and "prospects . . . in the future," ¶ 70, Plaintiffs concede it was forward-looking. As BLI explained in public filings, TAM was a "forward-looking statement" that may prove to be inaccurate. *E.g.*, Ex. 1 at 62. While Plaintiffs call BLI's cautionary language "boilerplate," Opp. 25, BLI specifically disclosed why TAM had limited "predictive accuracy" due to assumptions that may not be correct—and then listed

-9-

assumptions. Ex. 1 at 27. Even if this cautionary language was "repetitive," Opp. 24, that does not make TAM a statement of present facts. Indeed, Plaintiffs criticize TAM in hindsight based on *later* developments, which only confirms that it was forward-looking. *See id*. 9, 22 (calling TAM overstated because of "customer dissatisfaction" at unspecified times, because revenues from 2019 to 2021 proved to be "stagnant," and because BLI introduced a subscription model in mid-2021).

Plaintiffs fail to distinguish the on-point analysis of TAM in *Axogen*, which also dismissed claims based on a short-seller report by Scorpion's founder alleging that a company's TAM was too high. 2020 WL 13547449, at *1-3. The court held that the TAM was forward-looking and non-actionable because it was not a "present, observable fact," but instead estimated "*prospective* purchasers of goods wherever they are." *Id.* at *8. Because Axogen, like BLI, called TAM forward-looking and provided "detailed identification of risks," the statements were protected by the safe harbor. *Id.* at *10. The Eleventh Circuit affirmed the dismissal. 42 F.4th 1218 (11th Cir. 2022). Plaintiffs respond to *Axogen* only with a convoluted appeal to a footnote in the opinion in which the court cited another case, but that case similarly held that "market potential" was forward-looking. Opp. 25 n.13; *see* 2020 WL 13547449, at *8 n.3 (citing *In re GeoPharma, Inc. Sec. Litig.*, 399 F. Supp. 2d 432, 447-48 (S.D.N.Y. 2005) ["market potential" "qualifies as a forward-looking statement," and even if not, it was not false as it "could only be interpreted as an estimate of the total market for *all* products . . . whether or not . . . manufactured by GeoPharma"]).

### B.   No Pleaded Facts Support a "Strong Inference" of Scienter

As to scienter, the Opposition confirms that the Complaint lacks even a single particularized allegation about what Hobbs, Holt, or Wood knew at any point in time. Opp. 38. Plaintiffs deride the Ninth Circuit's scienter standard as "recycle[d]" and "oft repeated." *Id.* 2. But the law does not lose force through application. Without "detailed and specific allegations" showing the "Individual Defendants' knowledge" of alleged misstatements, the Exchange Act claims fail. *Curry v. Yelp Inc.*, 875 F.3d 1219, 1227-28 (9th Cir. 2017); *see Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.*, 2021 WL 4199273, at *8 (N.D. Cal. Sept. 15, 2021) (rejecting "conclusory" confidential witness statements that "do not indicate Individual Defendants' mental states").

Plaintiffs' lead argument cites the "core operations" theory, Opp. 38, but pursuing this theory

-10-

"is not easy." *Intuitive Surgical*, 759 F.3d at 1062. Plaintiffs do not claim to plead "specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations" or "witness accounts demonstrating that executives had actual involvement in creating false reports." *Id*. Therefore, they must plead the "rare circumstances" in which "it would be 'absurd' to suggest that management was without knowledge of the contents of the reports." *Id.* at 1063. But the cases Plaintiffs cite illustrate the sort of extraordinary facts that are not pleaded here. *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021) (inferring that Google CEO who received memo describing major security vulnerabilities shared information with Alphabet CEO); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-88 (9th Cir. 2008) (inferring scienter where executives were "directly responsible for . . . day-to-day operations" and stop-work orders by largest customers had "devastating effect on the corporation's revenue").

Plaintiffs' generic arguments—that Hobbs, Holt, and Wood were executives of a relatively small company focused on one core technology, Opp. 39—do not suffice. *See Iron Workers Loc. 580 Joint Funds v. NVIDIA Corp.*, 522 F. Supp. 3d 660, 679 (N.D. Cal. Mar. 2, 2021) ("[It] is not sufficient to allege that gaming was Defendants' core business."). Nor can Hobbs, Holt, and Wood be deemed to have scienter due to their "tenured history" at BLI, Opp. 2, 39, an argument that is utterly incompatible with the "strong inference" standard. *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) ("Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard."); *see also Applestein*, 561 F. App'x at 601 (inference that "due to their positions, the defendants must have known" certain facts was "entirely speculative").

As to Hobbs' and Holt's stock sales, Plaintiffs do not dispute that no particularized facts show that the sales were "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Curry*, 875 F.3d at 1226; *see Hampton*, 2020 WL 6710096, at *16 ("For individual defendants' stock sales to raise an inference of scienter, Plaintiffs must provide a meaningful trading history for purposes of comparison."). The allegations fail for that reason alone. Nor do Plaintiffs dispute that alleged sales by others are not

-11-

relevant to scienter.  *See* Mot. at 17-18.  Instead, Plaintiffs attempt to walk back their own allegation that the sales "were made pursuant to 10b5-1 plans." ¶ 171.  But as courts including this Court have held, a sale pursuant to such a plan "weighs against an inference of scienter," *Hampton*, 2020 WL 6710096, at *16 n.7, whether or not a defendant "introduces" the plan at the pleading stage.  The Court need not credit Plaintiffs' argument that "Defendants entered those [10b5-1] plans . . . while they were in possession of material non-public information," Opp. 41 (quoting ¶ 171), as it is unsupported by pleaded facts.  *See In re AnaptysBio, Inc.*, 2021 WL 4267413, at *9 (S.D. Cal. Sept. 20, 2021) ("Plaintiffs argue, Suria entered into his 10b5-1 trading plan knowing that 'the Company's statements . . . were false.' . . . But Plaintiffs fail to allege any facts to support that claim.").

Finally, the Opposition's argument that any executive resignation during the class period is suspicious because the Beacon "was flawed from the outset," Opp. 42 & n.25, exemplifies the type of "[m]ere conclusory allegation[]" that "without more, cannot support a strong inference of scienter." *Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2018 WL 3126393, at *10 (N.D. Cal. June 26, 2018).  Absent specific facts showing that the departures of Holt and Wood, and change in title of Hobbs, were "suspicious," Plaintiffs fail to "rebut the 'reasonable assumption'" that executive reshuffling in a newly public company occurred for ordinary business reasons.  *Webb v. SolarCity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018).  Nor do Plaintiffs plead facts showing that the market viewed the resignations as indicating fraud.  *Compare In re Plantronics, Inc. Sec. Litig.*, 2022 WL 3653333, at *19 (N.D. Cal. Aug. 17, 2022) (departures of executives, after investigation found undisclosed channel-stuffing and led to $65 million reduction in inventory, were suspicious).

### C.    No "Revelation" of "Truth" Caused the Alleged Loss

As to loss causation, Plaintiffs repeat general principles even though the Ninth Circuit has specifically addressed, and rejected, precisely what Plaintiffs attempt here:  using "an anonymous and self-interested short-seller's internet musings" to "show loss causation." *Nektar*, 34 F.4th at 832; *see also BofI*, 977 F.3d at 797.  Plaintiffs' cursory attempt to rehabilitate the Scorpion report's flaws to avoid the on-point holdings of *Nektar* and *BofI* (and multiple district court orders, which Plaintiffs ignore) fails.  Opp. 44-45.  Plaintiffs argue that the Scorpion report revealed "new information," *id.* 45, but even if that were true, it would be insufficient.  In *BofI*, the Ninth Circuit

-12-

held that *even if* the *Seeking Alpha* posts "disclosed information that the market was not previously aware of," their fundamental nature as short-seller criticism meant "it is not plausible that the market reasonably perceived these posts as revealing the falsity of BofI's prior misstatements." 977 F.3d at 797. In *Nektar*, the Ninth Circuit reiterated that even if a short-seller report "did provide new information to the market," and even if it "relates directly to the alleged false statements," it still was not corrective because "the character of the report . . . rendered it inadequate." 34 F.4th at 840.[2]

Plaintiffs also fail to defend the other alleged corrective disclosures, identifying no authority for their view that merely releasing financial results shows loss causation.[3] Nor do Plaintiffs explain how a year-end release of preliminary results and a disclosure of a CEO's title change corrected any misstatement. As Plaintiffs admit, specific pleaded facts must show that disclosures were "causally connected to the [alleged] fraud." Opp. 44; *see Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (specific pleaded facts must "trac[e] the loss back to 'the very facts about which the defendant lied'"). Yet Plaintiffs cite no analyst or other public reaction showing that the market interpreted these statements as revealing that "the truth became known." *BofI*, 977 F.3d at 789. Arguing that "the market understood" the allegedly concealed truth "at a base level" given a "declining stock price after each loss causation event," Opp. 47, does not suffice. That is the very theory of fraud-by-hindsight that the securities laws forbid. *See Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (securities laws are not designed "to provide investors with broad insurance against market losses").

## III.   THE SECURITIES ACT CLAIMS AND CONTROL-PERSON CLAIMS FAIL

The Securities Act claims "do[] not allege different misrepresentations" from the Exchange Act claims and therefore fail for the same reasons:  the statements are puffery, opinion statements,

---

[2] *Garcia v. J2 Global, Inc.*, cited by Plaintiffs, predated *Nektar* and the court did not "credit" "short seller findings," Opp. 7, but rather held that loss causation was pleaded where a short seller relayed only public information, not statements by unnamed and unreliable witnesses. 2021 WL 1558331, at *22 (C.D. Cal. Mar. 5, 2021).

[3] The Complaint does allege the same May 11 and August 11 statements as both misstatements and corrective disclosures. *See* ¶ 224 (incorporating ¶¶ 101-104); ¶ 228 (incorporating ¶¶ 106-111).

REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 4:21-CV-09497-HSG

and forward-looking, and allegations of their falsity merely parrot Scorpion's opinions. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 & n.15 (9th Cir. 2012); *see Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2016 WL 7475555, at *2 (N.D. Cal. Dec. 29, 2016) (Securities Act claims sounded in fraud, despite disclaimer, where "Plaintiffs also appear to rely on the same omissions and misstatements as they do for the Exchange Act claims"). The Opposition attempts to salvage the Securities Act claims by invoking notice pleading under Rule 8. But far from showing that the claims do not sound in fraud, the Opposition confirms that they do: it argues that Defendants made misstatements in the IPO materials "aimed at little more than whipping the investing public into a frenzy about BLI's prospects," Opp. 22, and "deceived the public because they 'would have had difficulty convincing the investing public to buy shares in the IPO,'" *id.* 38 (quoting ¶ 154).

Plaintiffs almost entirely ignore the Ninth Circuit's holding that "[t]he particularity requirements of Rule 9(b) apply" where Securities Act claims are "grounded in fraud," and its rejection of the same argument Plaintiffs make: that the Complaint "disclaimed . . . any allegation of fraud in connection with the section 11 cause of action, and . . . did not incorporate any of the section 10(b) conduct allegations in its section 11 claim." *Rigel*, 697 F.3d at 885. Here, as in *Rigel*, the "gravamen of the complaint is fraud." *Id.* Plaintiffs allege a "unified course of fraudulent conduct," starting from the IPO and through the class period. *Rubke v. Cap. Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009).[4] In any event, the allegations of falsity fail even under Rule 8. *See, e.g.*, *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1122 (N.D. Cal. Apr. 15, 2013).

The Opposition cannot manufacture a Securities Act violation by claiming the IPO materials violated Items 303 and 105. Plaintiffs' allegation that statements in the IPO materials were false and misleading "[a]t the time they were made" is unsupported by any pleaded facts revealing (in Plaintiffs' words) "known risks, trends, and uncertainties related to the Beacon" that should have been disclosed at the time of the IPO. Opp. 31; ¶¶ 266-273; *see* 17 C.F.R. § 229.303(b)(2)(ii); *id.*

---

[4] In *Hunt v. Bloom Energy Corp.*, cited by Plaintiffs, the defendants did not argue that section 11 claims were subject to Rule 9(b). 2021 WL 4461171, at *3 (N.D. Cal. Sept. 29, 2021). Similarly, in *Pino v. Cardone Cap., LLC*, 2021 WL 3502493 (C.D. Cal. Apr. 27, 2021), and *In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758 (N.D. Cal. 2020), no fraud claims were alleged in the complaint.

-14-

REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 4:21-CV-09497-HSG

§ 229.105. As Plaintiffs admit, the Securities Act claims turn on the Scorpion report, which does not contend that any "design and manufacturing issues" or "numerous customer complaints" were known to Defendants at the time of the IPO and "'reasonably likely to have material effects on [its] financial condition or results of operation.'" Opp. 30-31 & n.20; *Berg v. Velocity Fin., Inc.*, 2021 WL 268250, at *9-10 (C.D. Cal. Jan. 25, 2021) (dismissing claim that "Defendants violated Section 11 by failing to meet their disclosure obligations under Items 303 and 105" for reasons "discussed above"); *compare Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 387 (N.D. Cal. 2020) (specific allegations that seven months of service outages was known trend, and "unusual" service agreement guarantees was known risk, *at the time of offering*); *Lyft*, 484 F. Supp. 3d at 769 n.4 (allegation that Lyft saw "abundant" increase in sexual assault complaints against drivers, with "severe risk of brand damage," was known trend, risk, or uncertainty *at the time of offering*).

The Securities Act claims fail for other reasons. As Plaintiffs concede, Opp. 32, a motion to dismiss "may be granted" if "it is apparent from the face of the [complaint] and judicially noticeable facts that defendants have an absolute negative causation defense." *In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *28 (N.D. Cal. Oct. 1, 2015). The Opposition also fails to support allegations that Hobbs, Holt, and the Director Defendants were "statutory sellers" under section 12(a)(2). A plaintiff must plead specific acts of solicitation such as sending mass communications and posting on social media. *See Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1260 (9th Cir. 2022). Allegations that Holt was a "hands-on manager," that Hobbs held calls "with potential investors," and that the Director Defendants signed the IPO materials, Opp. 33-34, are insufficient.

Finally, the control-person claims fail because Plaintiffs do not plead a primary violation. The Opposition's argument that Khandros was a minority shareholder in BLI, appointed board members, sold shares in the SPO, and "was intimately familiar with the Company," Opp. 49, 51, 53, does not show that he had "actual authority over the preparation and presentation to the public of [BLI's] financial statements." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1066 (9th Cir. 2000).

## IV.   CONCLUSION

Because Plaintiffs' claims fail, and Plaintiffs failed to identify additional facts they would plead in a further amended complaint, the Complaint should be dismissed with prejudice.

-15-

Dated:  February 17, 2023

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By /s/ *Lauren C. Barnett*
 John W. Spiegel (SBN 78935)
 John M. Gildersleeve (SBN 284618)
 Lauren C. Barnett (SBN 304301)
 350 S. Grand Ave., 50th Floor
 Los Angeles, CA  90071
 Telephone:  (213) 683-9100
 Facsimile:  (213) 687-3702
 *john.spiegel@mto.com*
 *john.gildersleeve@mto.com*
 *lauren.barnett@mto.com*

Attorneys for Defendants Berkeley Lights, Inc., Eric D. Hobbs, Shaun M. Holt, Kurt Wood, Igor Khandros, Michael Marks, Sarah Boyce, Gregory Lucier, Michael Moritz, Elizabeth Nelson, James Rothman, Ming Wu, and Makoto Shintani

-16-