JORDAN ETH (SBN 121617)
JEth@mofo.com
CHRISTIN HILL (SBN 247522)
CHill@mofo.com
SAMUEL ISON (SBN 339688)
SIson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-1905
Telephone: 415.268.7000
Facsimile: 415.268.7522

*Attorneys for Defendant Nikon Corp.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| VICTOR J. NG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BERKELEY LIGHTS, INC., et al.,<br><br>Defendants. | Case No.   4:21-cv-09497-HSG<br><br>**DEFENDANT NIKON CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Judge:  Hon. Haywood S. Gilliam, Jr.<br>Date:   March 16, 2023<br>Time:   2:00 p.m.<br>Ctrm:   2 |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   ARGUMENT ....................................................................................................................... 1

    A.    Plaintiffs Do Not Adequately Allege a Primary Violation of the Securities Laws ................................................................................................................................ 1

    B.    The Court Can Dismiss Nikon on the Record Before It ........................................... 2

    C.    Plaintiffs Offer No Factual or Legal Basis for Treating the "Control Defendants" as a Single Control Group .................................................................... 2

    D.    Plaintiffs Fail to Establish That Nikon Controlled BLI ........................................... 3

        1.    Nikon's Minority Stake in BLI and Ability to Appoint One Director Do Not Establish Control. ........................................................................ 3

        2.    Nikon's Limited Distribution Agreement with BLI is a Red Herring. .......................................................................................................... 6

        3.    The Court Should Disregard Plaintiffs' Newfound SPO Theory ................ 7

III.  CONCLUSION .................................................................................................................... 8

i

## I.     INTRODUCTION

Nikon's Motion demonstrated that the Amended Complaint fails to plausibly state a claim for control person liability against Nikon where the only factual allegations against Nikon are that it: (1) owned no more than 8.1% of BLI's common stock; (2) appointed only one BLI director who served on the board for only the first day of the Class Period; and (3) had a limited distribution agreement with BLI.[1]  As explained in the Motion, these allegations do not state a claim for control person liability.

Plaintiffs' Opposition confirms that Nikon's Motion should be granted.  *First*, Plaintiffs argue that control person liability is an "intensely factual question" that should not be resolved on a motion to dismiss.  Courts within the Ninth Circuit, however, regularly dismiss control person claims where, as here, the allegations are legally insufficient to support a claim.  *Second*, Plaintiffs repeatedly argue that Nikon and all the other alleged Control Defendants should be treated as a unit.  Plaintiffs offer no factual basis or legal authority in support of this argument.  And they ignore Defendants' on-point authority that such group allegations fail as a matter of law.  *Third*, Plaintiffs provide no legal support for the notion that minority ownership, appointment of a single director, and a limited distribution agreement are sufficient to state a claim for control person liability.  *Finally*, Plaintiffs' new theory that control can be inferred because Nikon sold stock in BLI's secondary public offering is unsupported by the law or the factual allegations of the Amended Complaint.

Both control person claims against Nikon should be dismissed.

## II.     ARGUMENT

### A.     Plaintiffs Do Not Adequately Allege a Primary Violation of the Securities Laws

As an initial matter, the Opposition does not dispute that to state a claim for control person liability, a plaintiff must first allege a primary violation of federal securities laws.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  Nikon again joins in the arguments made

---

[1] This brief uses the defined terms set out in Nikon's Motion to Dismiss (ECF No. 129).

1

by the BLI Defendants that Plaintiffs have not sufficiently pleaded a primary violation of the securities laws by BLI.  For this reason alone, the claims against Nikon should be dismissed.

**B.      The Court Can Dismiss Nikon on the Record Before It**

In their Opposition, Plaintiffs suggest that the Court should treat control as a factual question that cannot be resolved at the motion to dismiss stage.  (Opp. at 48.)  That is not the law. Indeed, courts regularly dismiss defendants where the well-pleaded facts related to control allegations are legally insufficient to support a claim.  *See, e.g., Bao v. SolarCity Corp.*, No. 14-cv-1435-BLF, 2015 WL 1906105, at *5 (N.D. Cal. April 27, 2015); *In re Am. Apparel, Inc. S'holder Litig.*, No. 10-cv-06352 MMM (JCGx), 2013 WL 174119, at *37 (C.D. Cal. Jan. 16, 2013); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994); *In re Worlds of Wonder Sec. Litig.*, 721 F. Supp. 1140, 1149 (N.D. Cal. 1989).

**C.      Plaintiffs Offer No Factual or Legal Basis for Treating the "Control Defendants" as a Single Control Group**

Plaintiffs build their control person claims on the fiction of a multi-party control group which "collectively owned a majority of the outstanding shares of the Company" and jointly "designated the majority of the members of BLI's Board of Directors."  (AC ¶¶ 41, 56.)  In so doing, Plaintiffs ignore the case law cited in the Motion that explicitly rejects such aggregation of individual defendants.  *See* Motion at 5 (*citing In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1202 (D. Or. 2015) (allegations that "lump[] together all Defendants" are "insufficient to plead control person liability."); *Fouad v. Isilon Sys., Inc.*, No. C07-1764 MJP, 2008 WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008) (Without "allegations that the venture capital firms acted together to control [the company], these allegations of control by virtue of collective ownership are conclusory and unconvincing."); *LLDVF v. DiNicola*, No. 09-1280 (JLL), 2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010) ("[E]ach defendant's control must be evaluated separately unless there is some basis on which to consider their collective action. . . . [A] contrary holding would mean that any shareholder, no matter how small, could be grouped with others to form a majority control group, even absent any allegations or facts supporting that shareholder's actual control")).  *See also Worlds of Wonder Sec. Litig.*, 721 F. Supp. at 1145

2

(holding that "(a)lthough plaintiffs group these defendants together as the 'Venture Capital Defendants' plaintiffs have alleged nothing which would at all suggest that these defendants acted 'collectively' with each other.").

In support of their argument that the various Control Defendants can be consolidated, Plaintiffs rely on a single out of Circuit case—*In re Cobalt Int'l Energy, Inc*, No. CV H-14-3428, 2016 WL 215476, at *1 (S.D. Tex. Jan. 19, 2016). That case is readily distinguishable on the facts and the law. In *Cobalt*, the court found that the plaintiffs adequately alleged that five outside companies (Goldman Sachs, Riverstone, Carlyle, First Reserve, and Kern) together controlled the primary defendant Cobalt based on their significant stock ownership and ability to elect a majority of Cobalt's Board of Directors. *Id*. at *11. Importantly, and unlike the present case, the control defendants had a stockholder agreement among them that provided certain control rights, including allowing them to select the majority of most board committees. *Id*. Further, in its Form 10-K, Cobalt identified itself as a "controlled company" in which "more than 50% of the voting power is held by another person or group of persons ***acting together***." *Id*. (emphasis added.) And the 10-K specifically identified the control defendants as having a majority of voting power. Here, there are no allegations that the "Control Defendants" had an agreement to work together, and there is no allegation of joint action. In any event, the *Cobalt* court was applying a more lenient control person standard than the Ninth Circuit. *Compare Cobalt*, 2016 WL 215476, at *11 ("At the pleading stage, a plaintiff need only allege that [the defendant] possessed the power to control the primary violator, not that control was exercised.") (internal quotations omitted) *with In re Tezos Sec. Litig*., No. 17-cv-06779 RS, 2018 WL 4293341, at *10 (N.D. Cal. Aug. 7, 2018); ("[I]t is clear the Ninth Circuit requires some assertion of a defendant's 'day-to-day' interaction with a company" for a control person claim to stand).

**D.     Plaintiffs Fail to Establish That Nikon Controlled BLI**

**1.     Nikon's Minority Stake in BLI and Ability to Appoint One Director Do Not Establish Control.**

As Nikon's Motion showed, court after court has held that "a defendant's status as minority shareholder is insufficient to establish control person liability, even when combined with

3

the power to appoint directors." *Fouad*, 2008 WL 5412397, at *13; *see also, e.g., Bao*, 2015 WL 1906105, at *5 (dismissing control person claim against 30% shareholder who was also chairman of the board); *Gupta Corp.*, 900 F. Supp. at 1243 (stating that a defendant's "position as a minority shareholder. . .with an agent on the board does not establish control person liability"); Mot. at 6-7 (collecting cases). ***Plaintiffs ignore all of these cases***.

Plaintiffs nonetheless contend that the "Control Defendants'" equity stakes and board seats are sufficient to establish control "at this stage of the litigation." (Opp. at 52-53.) In support of their argument, Plaintiffs rely on sound bites from a handful of cases that ultimately support Nikon's position.

First, Plaintiffs quote from the Ninth Circuit's decision in *Arthur Children's Trust v. Keim*, which states that "although a person's being an officer or director does not create any presumption of control, ***it is a sort of red light***." (Opp. at 52 (quoting *Arthur Children's Tr. v. Keim*, 994 F.2d 1390, 1397 (9th Cir. 1993) (emphasis from Opposition).) Plaintiffs also point out *Keim's* observation that it is "not uncommon for control to rest with a group of persons, such as the members of the corporation's management." *Id*. But Nikon is ***not*** an officer or director. Nor is there any allegation that Makoto Shintani—Nikon's employee and alleged appointee to the BLI board—had any involvement whatsoever in management of the Company. Nor would he be expected to have any role in management as an outside director.[2] In contrast, *Keim* involved a joint venture that was created pursuant to an agreement that provided, in part, that "the management of the business affairs of the Venture shall be vested in a Management Committee . . ." (*Keim* at 1393), whose decisions would be binding on the joint venturers. *Id*. at 1397. The court found that the members of *that* committee were liable as "control persons" of the joint venture under Section 20. *Id*. These facts bear no resemblance to the facts of this case. And if there is no presumption of control for an officer of the company—whose very job is to run the company's day-to-day operations, then there certainly can be no presumption of control for a

---

[2] Plaintiffs also ignore—and therefore concede—Nikon's showing that there are no allegations that Nikon controlled Mr. Shintani's activities as a BLI director. (Mot. at 7.)

4

minority investor who is the employer of one outside director who is not alleged to have any role on any management committee of the Company.

Next, Plaintiffs cite *In re Energy Recovery Sec. Litig.*, No. 15-cv-00265-EMC, 2016 WL 324150, at *25 (N.D. Cal. Jan. 27, 2016), for the principle that, "[c]ourts have found general allegations concerning an individual's title and responsibilities to be sufficient to establish control at the motion to dismiss stage." That case was weighing control person allegations against the Chief Executive Officer who was alleged to run the day-to-day operations, and the Chief Marketing Officer who was not alleged to speak on behalf of the company. The court denied the motion to dismiss the CEO, but granted the motion to dismiss the CMO. As the quote suggests, the control defendants' alleged "responsibilities" informed the outcome. Here, there are no allegations regarding Mr. Shintani's responsibilities (let alone Nikon's responsibilities), and certainly no allegations that Mr. Shintani's one day on the Board during the Class Period somehow empowered him with responsibilities that amounted to "control."

Finally, Plaintiffs misconstrue *In re American Apparel, Inc. S'holder Litig.*, 2013 WL 174119 (C.D. Cal. Jan. 16, 2013). (Opp. at 52.) First, that case ***granted*** the motion to dismiss the alleged control defendant, Lion Capital, finding that the complaint did not adequately allege control person claims against the minority investor. *In re Am. Apparel*, 2013 WL 174119, at *36. While the court observed in dicta that ***other*** courts have concluded that minority interest is sufficient to establish control (*id.* (citing *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 638 (S.D.N.Y. 2007)),[3] the court's decision to dismiss the minority investor shows that the court did not follow this view. Indeed, the *American Apparel* court also explained that "[t]he fact that a company has representatives on another company's board, and that it holds a minority stock interest are . . . ***insufficient*** to establish control person liability." *Id.* at *34 (emphasis added).[4]

---

[3] The *Refco* case also does not help Plaintiffs. In that case, the court found control allegations sufficient where the complaint alleged that the defendant's position as "Executive Vice President and General Counsel gave him some degree of control over Refco, and that he was directly involved in its day-to-day operations, including financial reporting and accounting." 503 F.Supp.2d at 638. There are no such allegations in this case.

[4] Plaintiffs' footnoted authorities are inapposite. (*See* Opp. at 53, n. 31.) *Hill York Corp. v. Am. Int'l Franchises, Inc.*, simply stands for the unremarkable proposition that, when

5

**2.      Nikon's Limited Distribution Agreement with BLI is a Red Herring.**

As Plaintiffs concede, to establish control, the Ninth Circuit requires a showing regarding "the defendant's participation in the day-to-day affairs of the corporation." (Opp. at 53 (quoting *Kaplan v. Rose*, 49 F.3d 1363, 1382 (9th Cir. 1994)).) In an effort to make this showing, Plaintiffs point to Nikon's limited distribution agreement with BLI. (Opp. at 53-54.) But the distribution agreement has nothing to do with control.

The Amended Complaint alleges that Nikon's business relationship with BLI as a distributor of its products in a handful of countries in Asia, "provided Nikon with important insight into Berkeley Lights's [sic] placement of products in Asia, including trends in accounts receivable." (AC ¶195.) These allegations are irrelevant and conclusory. "Insight" does not equate to "control." As Plaintiffs pointed out in the Motion, the Amended Complaint lacks factual allegations that could support a conclusion that Nikon's business dealings with BLI were anything other than an arm's length business relationship. (Mot. at 7-9 (*citing In re Homestore.com Sec. Litig.*, 347 F. Supp. 2d 790, 810 (C.D. Cal. 2004) (dismissing control person claim and finding that the provision of services did not establish control)). Plaintiffs make no effort to respond to these arguments (or even mention them), and therefore concede that Nikon did not control BLI through the distribution agreements. *See Marziano v. Cnty. of Marin*, No. 10-2740 EMC, 2010 WL 3895528, at *4 (N.D. Cal. Oct. 4, 2010) ("the Court views [Plaintiffs] failure to oppose the argument as a concession that the [allegations] should be dismissed"); *Vogan v. Wells Fargo Bank, N.A.*, No. 11-2098-JAM-KJN, 2011 WL 5826016, at *6 (E.D. Cal.

considered alongside other factors, the "absence of a substantial ownership of shares does not foreclose liability . . . as a controlling person." 448 F.2d 680, 694 n.20 (5th Cir. 1971) (citation omitted). In deciding the case on appeal following a jury verdict, the court in *Hill York* found evidence of other control factors besides stock ownership, such as the power to direct the management and policies of the company, the authority to propose and organize the transaction at issue, and the ability to leverage a franchise agreement to compel compliance. *Id*. at 694. None of those factors are present here. *One Longhorn Land I, L.P. v. FF Arabian, LLC*, No. 4:15cv203-RC-CMC, 2015 WL 7432360, *3 (E.D. Tex. Nov. 23, 2015), is similarly unsupportive. That case was decided under a more lenient pleading standard, and involved allegations that the control defendant had a financial relationship with the primary defendant which gave them the ability to "manage and conduct the day-to-day operation of the company" and to "take any and all other action in connection with the company." There are no comparable allegations in the instant case.

NIKON'S REPLY BRIEF ISO MOTION TO DISMISS
Case No. 4:21-cv-09497

Nov. 17, 2011) (where "Plaintiffs do not respond to Defendants' arguments in their Opposition," "Court interprets Plaintiffs' failure to respond as a concession to Defendants' arguments"); *In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1090 (W.D. Wash. 2003) ("Court interprets Plaintiffs' failure to address this issue as a concession that this argument constitutes a valid reason for dismissal").

### 3.   The Court Should Disregard Plaintiffs' Newfound SPO Theory

In a final effort, Plaintiffs argue that the fact that the Control Defendants were able to sell stock in a Secondary Public Offering ("SPO") is indicative of the control they had over the Company.  (Opp. at 51-52.)  Plaintiffs do not cite any authority for this novel theory, which is, in any event, unsupported by the allegations in the Amended Complaint.

Again, to plead "control," Plaintiffs must allege facts indicating Nikon's involvement in BLI's day-to-day operations or Nikon's specific control over the allegedly misleading statements at issue.  Allegations that Nikon somehow controlled BLI in an agreement whereby certain stockholders gained early release from the IPO lockup is not an indication that Nikon controlled BLI's day-to-day operations or the alleged misstatements at issue.[5]

In any event, this theory is not alleged in the Complaint and therefore cannot be considered now.  The Amended Complaint does not allege that Nikon played any role whatsoever in the arrangements that would allow the selling stockholders early release from lockup agreements.  Rather, the Amended Complaint alleges only that, "the underwriters for the IPO had agreed to allow the selling stockholders to exit their 180-day IPO lockup agreements early."  (AC ¶161.)  The Amended Complaint does not even hint that this arrangement was the result of Nikon, or any other defendant, exerting control over BLI.  Plaintiffs' argument is therefore "irrelevant for Rule 12(b)(6) purposes."  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir.

[5] The Amended Complaint does not allege when the early release agreement was made, but to the extent Plaintiffs' newfound SPO allegations are tied to the timing of the SPO stock sales, Mr. Shintani was no longer on BLI's Board of Directors at the time of the SPO. Mr. Shintani resigned from BLI's Board upon the close of the July 17, 2020 IPO.  (Barnett Decl., Ex. 1 at 141.)  The Amended Complaint alleges that the SPO occurred in November 2020.  (AC ¶160.)

1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original).  Because "Plaintiff[s] may not amend [their] complaint through an opposition" to a motion to dismiss, the only proper course is to dismiss.  *Zeiny v. United States*, No. 19-cv-05806-HSG, 2020 WL 496076, at *3 (N.D. Cal. Jan. 30, 2020); *see also Zora Analytics, LLC v. Sakhamuri*, No. 13-CV-639-JM (WMC), 2013 WL 12124612, at *6 (S.D. Cal. June 18, 2013) (dismissal where plaintiff asserted for the first time in opposition brief that wrongdoer acted as defendant's agent with respect to the allegedly deceptive conduct).

## III.    CONCLUSION

For the foregoing reasons, Nikon respectfully requests that the Court dismiss the Amended Complaint.

Dated:        February 17, 2023              By: /s/ *Christin Hill*

JORDAN ETH
CHRISTIN HILL
SAMUEL ISON
MORRISON & FOERSTER LLP

*Attorneys for Defendant Nikon Corp.*